**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:

BKY #26-40377
Chapter 12

Joel Urdahl and Stephanie Urdahl,

Debtors.

**MODIFIED CHAPTER 12 PLAN OF REORGANIZATION**
**DATED OCTOBER 29, 2026**

## PART 1: TERM AND EFFECTIVE DATE

This plan shall continue for a period of three (3) years from its effective date. The date of the entry of the order first confirming a plan is the effective date.

## PART 2: LIQUIDATION ANALYSIS

The debtor's net equity in their property, plus the security from the property after deducting the amounts of the secured claims and exemptions, is $31,249.31 and the processing fee claim. The net proceeds received shall be paid to Trustee for distribution to other claims. Priority and non-priority unsecured creditors (but not including attorney's fees) will receive no less than $31,249.31 over the life of the plan. The debtors' liquidation analysis is attached to this plan **[See Exhibit A].**

## PART 3: DISPOSABLE INCOME

For the term of this plan, all of the debtors' disposable income (income not necessary for the continuation, preservation and operation of the farm and for the maintenance or support of the debtors and their dependents), regardless of the amount, will be paid to the Trustee. The Trustee shall disburse these funds first to any unpaid priority claims (including administrative expenses and Trustee's fees) and second to non-priority unsecured creditors.

## PART 4: LIVING EXPENSES

The debtors' projection of living expenses are $5,000 per month. The debtor shall limit their annual withdrawals for living expenses to said amount, unless said amount is modified by Court Order. The Court shall retain authority and jurisdiction to modify said allowance upon application of a party in interest.

## PART 5: COSTS OF ADMINISTRATION AND PROFESSIONAL FEES

Claims for compensation and expenses of professionals and court costs shall be paid upon approval by the Court and as directed by the Court or the terms of this plan.

**Class 1: Trustee's Fees.** The Chapter 12 Trustee shall make application to the Court for approval of trustee's fee and for any reasonable and necessary expenses of the Trustee in effectuating the Trustee's duties under the Bankruptcy Code in administering this case. The debtors shall pay an amount equal to five percent (5%) of all payments disbursed by the Chapter 12 Trustee as an estimated payment and the Trustee shall hold the fee until the Trustee's fees and expenses are applied for and approved by the Court. Once the Trustee's fees are approved, the Trustee shall pay them. If there are excess funds in the account at the end of the case, the money shall be paid to the unsecured creditors and any excess after paying the unsecured creditors shall be paid to the debtors, unless otherwise ordered by the Court. **All payments shall be made through the Chapter 12 Trustee unless otherwise stated herein. Creditors shall only accept direct payments from the debtors if specified in the Plan.**

**Class 2: Debtors' Attorney's Fees.** Debtor's attorney will apply to the Court for compensation in this case for attorney's fees, administrative work and reimbursement of costs and expenses incurred during the representation of the debtors pre- and post-petition. Upon approval of such compensation by the Court, the debtor shall make a payment for the remaining fees owed (after application of the debtor's pre-petition retainer of $7,985. Additional approved debtors' attorney's fee applications shall be paid to the attorney on or before December 15 of the following year. The debtors' shall provide the additional funds as is necessary to provide for the Trustee's 5% fee when making these payments.

## PART 6: SECURED CLAIMS

**Class 1: Secured Claim of Harvest Bank.** The claim in the amount of $505,109.00 and is secured by the following mortgaged real property owned by the Debtor:

EXHIBIT A

The Land referred to in this Commitment is in the State of Minnesota, County of MEEKER, and described as follows:

Parcel 1: Government Lot 5 and Government Lot 6 and Government Lot 7, all being in Section 34, Township 119 North, Range 31 West, Meeker County, Minnesota.
EXCEPT
That part of Government Lot 6 and that part of Government Lot 7, all being in Section 34, Township 119 North, Range 31 West, Meeker County, Minnesota, described as follows: Commencing at the East Quarter corner of said Section 34; thence on an assumed bearing of North 00 degrees 20 minutes 06 seconds West, along the east line of said Government Lot 7 for 1321.68 feet to its intersection with the north line of said Government Lot 7; thence South 89 degrees 50 minutes 09 seconds West, along last said line for 520.79 feet to the point of beginning of the tract of land herein described; thence South 05 degrees 38 minutes 21 seconds East for 1489.04 feet; thence South 78 degrees 11 minutes 39 seconds West for 214.54 feet; thence South 03 degrees 09 minutes 28 seconds East for 338.85 feet; thence North 87 degrees 46 minutes 36 seconds West for 1838.19 feet; thence North 32 degrees 40 minutes 26 seconds West for 293 feet, more or less, to the shoreline of Minnesota Lake; thence northerly, easterly and northerly, along said shoreline to its intersection with the north line of said Government Lot 7; thence North 89 degrees 50 minutes 09 seconds East, along last said line for 66 feet, more or less, to the point of beginning and there terminating.

and

PARCEL 1 139.73 ACRES

VALUE - $887,900.00

Parcel 2: The South Half of the Northwest Quarter (S1/2 of the NW 1/4) and the NortJ1 Half of the Southwest
Qarter (Nl/2 of the SW!/4), all being in Section 35, Township 119 North, Range 31 West, Meeker County, Minnesota.

PARCEL 2 160 ACRES

HOMESTEAD VALUE

$873,000.00

* 1 acre lost due to adverse possesion

The Debtor will make annual payments as they are due and this claim is fully secured. This class will be paid pursuant to the terms of the contract. No Trustee fees will be paid on this claim.

**Class 2:** Class 2. Farmers & Merchants State Bank of Pierz. Class 2 is the claim of Farmers & Merchants State Bank of Pierz ("F&M"). F&M has contracted to sell the claim to Robert Kruger (the "Claim Buyer"). The sale of the claim is subject to a payment by the Claim Buyer to F&M due on or before November ____, 2026 (the "Loan Sale Payment"). To the extent the Loan Sale Payment is made and the parties are otherwise in compliance with the loan sale agreement (and the claim is assigned to Claim Buyer), then the following terms shall apply:

Class 2 is the now partially secured claims of Farmers and Merchants as assigned to Robert Kruger in the amount of $280,000.00 consisting of the Debtors' interest in livestock and the non-exempt farm equipment. The Banks Secured Claim has been reduced by the Stipulation between Bank and Kruger as follows:

a. Cattle listed on Exhibit B were disposed of and the net proceeds were provided to the Bank in the amount of $72,818.50.
b. The Debtors delivered the equipment to be auctioned to Steffes and the amount proceeds were be delivered to the Bank in the amount of $8,401.
c. The value of the equipment and the remaining cattle is adjusted to reflect the Debtors' estimation of value the sale price and acknowledge the Banks appraisal over valued the collateral by 30% when compared to actual results.
d. Bank abandoned its claim on feed, items and equipment with value less than $200 as part of the Stipulation.
e. The equipment debt in the amount of $167,650.00. This claim will be paid over 7 years at 5.4% interest annual payment of $28,474.55. First payment is due on December 10, 2027, (assuming the government payment is received by then) and remaining annual payment will be due on December 10 of each year until 2034, when the remaining balance shall be due. If government payment is delayed, the payment will be made within 10 days of receipt of the delayed payment.
f. The cattle debt is in the amount of $79,032.00. This claim will be paid over 5 years with annual payments of $17,878.99 due on December 10, 2027, and on December 10 of each year thereafter until 2030 when the remaining balance will be due. Once the cattle payment is made, the cattle remaining shall be released from the Banks claim except for the breeding stock shall remain with the 30 cows and 2 bulls remaining as the Debtors' cattle.
g. Banks proof of claim asserts a claim in the amount of $1,240,096.00 (Claim 5). However, the Banks objection to the Debtors' Plan filed at Docket 54 assert that the Bank is owed $1,212,306.99 pn February 3, 2026. Since the filing, the Bank received payment from its collateral of $8,401 (from the equipment auction) and $71,818 from cattle sales. Based upon this information the Banks unsecured claim addressed in Part 6 is 1,320,097.08 and the remaining secured claim to be paid is $149,781.00. The remaining secured debt in the amount of $50,000.00 shall be paid in December 10, 2030.The Bank assigned its note and security to Robert in the amount of $280,000.00 is secured and paid herein and the amount of $ 879,520.00 is unsecured and included in part 6.

(the "Claim Buyer Repayment Terms").

If the Loan Sale Payment is not made or the Claim Buyer does not otherwise comply with the loan sale agreement (and the claim is not assigned to Claim Buyer), then the pending stay relief motion filed by F&M [Doc. 19] shall be granted without further notice, hearing or order. The Claim Buyer and Debtors are related parties. The Debtors have reviewed and approved the terms and conditions of the loan sale agreement. In no event shall the Claim Buyer Repayment Terms be enforceable as to F&M. In consideration of the benefits afforded the Debtors by F&M offering to sell the F&M claim to the related party Claim Buyer, the Debtors hereby release F&M from any and all claims or other liabilities related to F&M's claim.

**Class 3:** Class 3 of secured claims of USDA in the amount of $475,937.00 and secured by Parcel 1 and 2 of Exhibit A. This loan shall be paid by its terms as payment becomes due. No Trustees fees will be paid on this class.

**Class 4:** Class 4 of secured claims of Fifth Third Bank in the amount of $24,178.72 on the 2017 Yukon XL. This claim will be paid pursuant to its existing term except the payment due in 2026 shall be paid 30 days after the effective date. No Trustees fees shall be due on this class.

## PART 5: PRIORITY AND OTHER ADMINISTRATIVE EXPENSE CLAIMS

Part 5 consists of all claims entitled to priority under § 507, which shall be paid prior to payment of non-priority, general unsecured claims.

## PART 6: NON-PRIORITY UNSECURED CLAIMS

Part 6 consists of allowed non-priority unsecured claims, including, but not limited to, allowed non-priority unsecured claims of creditors which are as a result of damages arising as a result of the rejection of unexpired leases and/or executory agreements, allowed non-priority unsecured claims resulting from the value of a secured claim being of a value less than the creditor's collateral, allowed non-priority claims of those secured creditors whose claims are determined to be unsecured, allowed non-priority governmental claims arising under 11 U.S.C. § 1232, and allowed non-priority unsecured claims for taxes and penalties which are not included in any other Class. Payments made to this Class shall be disbursed by the Trustee pro-rata based on the amount of allowed claims existing on the date of disbursement. Nothing in this Part shall restrict the debtor, Trustee, or other party from objecting under Fed. R. Bankr. P. 3007 to the allowance of a claim. The Debtors project they will pay 10,000 a year for the first two years. Any shortage will be made upon year 3 when remainder of 31,249.31 will be paid.

## PART 7: 11 U.S.C. § 1232 GOVERNMENTAL CLAIMS

Governmental claims arising under 11 U.S.C. § 1232 (1) shall be treated as non-priority unsecured claims arising before the date on which the petition is filed; (2) shall be treated under Part 8 of the plan (Non-Priority Unsecured Claims), provided that the claim is not otherwise disallowed, (3) shall not be entitled to priority treatment under 11 U.S.C. § 507; and (4) shall be discharged in accordance with 11 U.S.C. §§ 1228 & 1232. If the debtor files a tax return after the filing of the petition for a period in which a claim under 11 U.S.C. § 1232(a) arises, and the claim relates to the tax return, the debtor shall serve notice of the claim pursuant to 11 U.S.C. § 1232(d)(2). Nothing in this Part shall restrict the debtor, Trustee, or other party from objecting under Fed. R. Bankr. P. 3007 to the allowance of a claim.

## PART 8: EXECUTORY CONTRACTS AND LEASES

Part 13 consists of executory contracts and leases existing as of the date of filing. All such executory contracts and leases are rejected unless specifically assumed in this Part. The debtors have entered into the following executory contracts and leases:

- USDA Land Improvement Contract – USDA. This contract is assumed.

- FSA Farm Program for crop year 2026. This contract is assumed.

## PART 9: EXECUTION OF PLAN AND CASH FLOW ANALYSIS

The debtors propose to continue their farming operations and make the plan payments out of farm or other income. The debtors' projections of income, operating expenses, and plan payments are attached as **Exhibit B**.

## PART 10: RETENTION OF LIENS AND INCORPORATION OF DOCUMENTS

All creditors whose claims are treated as secured in this plan shall retain their liens on the collateral securing their respective claims as specified in the plan and until such claims are paid in full in the amount allowed as secured. Except as modified by the terms of this plan, all documents evidencing indebtedness and security in favor of said secured creditors remain the same and are incorporated herein by reference. Either the debtors or any creditor may record this plan and the Order confirming this plan with the Office of the County Recorder of each county in which the debtor has an interest in real estate without violation of the automatic stay.

## PART 11: GENERAL PROVISIONS

1. The Court shall retain jurisdiction over the debtors and his property for the term of the plan. Property of the estate vests in the Debtor upon dismissal, conversion, or completion of plan payments due during the term of the plan.

2. As part of the continuing farm operation, the debtors shall submit operating reports and bank statements on a monthly basis to the Chapter 12 Trustee. The debtors shall provide the Chapter 12 Trustee copies of tax returns annually once filed.

3. For the duration of the Chapter 12 plan, the debtors shall seek court approval to obtain credit or incur debt outside the ordinary course of business.

4. For the duration of the Chapter 12 plan, the debtors shall seek court approval to use, sell, or lease property outside the ordinary course of business.

---

/e/ David C. McLaughlin
FLUEGEL, ANDERSON, MCLAUGHLIN
& BRUTLAG, CHARTERED
David C. McLaughlin
Attorney for Debtors
129 2nd Street NW
Ortonville, MN 56278
(320) 839-2549
Attorney License #127383
dmclaughlin@fluegellaw.com

Signed: /s/ Joel Urdahl

Debtor 1: Joel Urdahl

Dated: October 29, 2026

Signed: /s/ Stephanie Urdahl

Debtor 1: Stephanie Urdahl

Dated: October 29, 2026

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re: BKY 26-40377

Chapter 12

Joel Urdahl and Stephanie Urdahl,
Debtors.

**NOTICE OF HEARING ON CONFIRMATION OF MODIFIED CHAPTER 12 PLAN OF REORGANIZATION DATED OCTOBER 29, 2026 [ECF 71]**

PLEASE TAKE NOTICE that the hearing on Confirmation of Modified Chapter 12 Plan of Reorganization dated October 29, 2026 [ECF 71] is scheduled for **December 15, 2026, at 10:00 a.m.** The hearing will be conducted telephonically. Please contact Judge Fisher's Courtroom Deputy by email at mnb_fisher_hearings@mnb.uscourts.gov(link sends e-mail) or by telephone at 651-848-1061 to obtain the dial-in information. Dial-in instructions for telephonic hearings will also be displayed the day prior to the hearing on Judge Fisher's public calendar here: https://www.mnb.uscourts.gov/judges-calendars. Any person wanting to appear in person must contact Judge Fisher's Courtroom Deputy at 651-848-1061 at least 48 hours prior to the hearing.

A copy of the modified plan was served upon all parties October 29, 2026 the date of the filing.

OBJECTIONS TO CONFIRMATION: An objection to confirmation of the Plan shall be made under Local Rule 3015-3. Seven days prior to the hearing is the last day to timely deliver an objection, and ten days prior to the hearing is the last day to timely mail an objection. The objection must be filed not later than one day after service.

Dated this 29th day of October, 2026.

Respectfully submitted,

FLUEGEL, ANDERSON, MCLAUGHLIN, & BRUTLAG, CHARTERED

/e/ David C. McLaughlin
David C. McLaughlin
Attorney for Debtors
129 2nd Street NW
Ortonville, MN 56278
(320) 839-2549
Attorney License #127383